UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------×
MANUEL GARCIA, *on behalf of himself and those similarly situated,*

        *Plaintiff,*

    *v.*

THE EXECU|SEARCH GROUP, LLC,

        *Defendant.*
-------------------------------------------------------------------------×

**17 CV 9401**

**CLASS ACTION COMPLAINT**

Plaintiff Manuel Garcia, on behalf of himself and those similarly situated, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant The Execu|Search Group, LLC ("Execu|Search"), as follows:

## PRELIMINARY STATEMENT

1. Mr. Garcia seeks damages and costs against Execu|Search for failing to provide him with (1) a copy of his consumer credit report, and (2) a description in writing of his rights under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, before taking an adverse employment action against him based on his consumer credit report, in violation of the FCRA.

2. Mr. Garcia brings his FCRA claims on behalf of himself and all other similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under the FCRA.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

1

## TRIAL BY JURY

5.      Plaintiff respectfully requests a trial before a jury.

## PARTIES

6.      Mr. Garcia, at all times relevant hereto, was and is a resident of Bronx County in the State of New York.

7.      Upon information and belief, at all times relevant hereto, Execu|Search was and is a limited liability company organized under the laws of the State of Delaware with offices located at 675 Third Avenue, 5th Floor, New York, New York 10017 in New York County.

## CLASS ACTION ALLEGATIONS

8.      Pursuant to Rule 23, Mr. Garcia seeks to prosecute his FCRA claims as a class action on behalf of himself and other individuals in the State of New York as follows:

   a. Class 1: applicants for employment with Execu|Search in the State of New York whom Execu|Search failed to provide with a copy of their consumer credit report before taking an adverse employment action against them based on their consumer credit report ("Class 1") at any time during the seven-year period immediately preceding the filing of the original complaint (the "Statutory Period"); and

   b. Class 2: applicants for employment with Execu|Search in the State of New York whom Execu|Search failed to provide with a copy or a description in writing of their rights under the FCRA before taking an adverse employment action against them based on their consumer credit report ("Class 2") at any time during the Statutory Period.

9. While the exact number of Class members is presently unknown, it is estimated that there are at least 50 Class members in Class 1 and at least 50 Class members in Class 2.

10. According to its website, Execu|Search has placed 62,000 people in new jobs for 27,000 companies. As such, it is reasonable that there would be at least 50 members in each Class.

11. The group of potential Class members is so numerous as to make it impracticable to bring them all before the Court, for which reason Mr. Garcia initiates this litigation for all persons similarly situated pursuant to Rule 23.

12. Despite the numerical size of the Classes, the identities of Class members can be ascertained through Execu|Search's records.

13. Mr. Garcia and his counsel do not anticipate any difficulties in the management of this action as a class action.

14. Mr. Garcia is committed to vigorous prosecution of this action, will adequately represent the purported Class members in this action, and has retained competent counsel experienced in class action litigation.

15. Mr. Garcia is a member of Class 1 and Class 2 and has no interest antagonistic to or in conflict with other Class members.

16. This action raises numerous questions of law and fact which are of common and general interest to the Class members, including:

    a. whether Execu|Search failed to provide Class 1 members with copies of their consumer credit reports before taking adverse employment actions against them;

    b. whether Execu|Search failed to provide Class 2 members with written descriptions of their rights under the FCRA before taking adverse employment actions against them;

    c. whether Execu|Search had taken any steps to comply with the FCRA prior to Mr. Garcia's application for employment, hiring, and termination;

    d. Execu|Search's policies pertaining to the FCRA and criminal background checks;

    e. whether Execu|Search's violations of the FCRA were willful; and

    f. whether Execu|Search is liable for all damages claimed hereunder, including, but not limited to, statutory damages, interest, costs and disbursements and attorneys' fees.

17. Mr. Garcia's claims or defenses are typical of the claims or defenses of the Class Members.

18. Mr. Garcia has the same interests as other Class members in prosecuting his claims against Execu|Search.

19. Mr. Garcia and all Class members sustained damages as a result of Execu|Search's wrongful conduct.

20. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

21. Furthermore, due to the expense and burden of individual litigation, it would be extraordinarily difficult for Class members to redress the wrongs done to them individually.

22. Mr. Garcia and The Harman Firm, LLP, will fairly and adequately assert and protect the interests of the Class members.

## STATEMENT OF FACTS

23. Mr. Garcia is an experienced information technology (IT) professional with over a decade of experience in a wide range of technical applications and programming languages.

24. In and around September 2017, Bryant Vargas, a recruiter at Execu|Search, contacted Mr. Garcia about an open IT Trainer position at NewYork-Presbyterian Hospital (NYP).

25. The position was a six- to nine-month contract, during which Mr. Garcia would be an employee of Execu|Search, working on site at various NYP locations to train nurses and doctors on using its software application.

26. Mr. Garcia responded that he was interested in the position.

27. Mr. Vargas scheduled Mr. Garcia for an in-person interview at Morgan Stanley Children's Hospital on September 26, 2017, with Jeff Rodriguez, NYP's Mobile Communications Manager.

28. Mr. Garcia's interview went well, and the next day, September 27, 2017, Execu|Search offered him the IT Trainer position.

29. Danielle Polumbo, Execu|Search's Field Staff Concierge, then sent Mr. Garcia onboarding paperwork, including an authorization for a background check.

30. Mr. Vargas directed Mr. Garcia to report to Memorial Sloan Kettering Cancer Center at 9:00 a.m. on October 2, 2017, for his first day of work.

31. On October 2, 2017, Mr. Garcia worked his first day at NYP without issue.

32. That morning, Lisa Samson, Execu|Search's Senior Technical Recruiter for IT, sent Mr. Garcia a formal offer letter for the IT Trainer position.

33. The letter stated:

"We are delighted to have you join New York Presbyterian Hospital as an IT Trainer. Your start date will be October 2, 2017. We are offering you this position on a contract basis at a rate of $40.00/hr for six to nine-month contract. Additionally, you will be able to expense your parking and travel (reimbursed by mileage and tolls) during the contract. During your consulting period, you will be an employee of the Execu|Search Group on-site at New York Presbyterian Hospital. We are confident that you will do this job well and make NYPH a stronger organization. Please sign below to demonstrate that you understand and accept the terms of this letter. Welcome to Execu|Search!"

34. The following day, October 3, 2017, Ms. Samson called Mr. Garcia to tell him that Execu|Search had received the results of his background check, which, she explained, had revealed that Mr. Garcia had open criminal charges.

35. Ms. Samson told Mr. Garcia that Execu|Search would be terminating his employment because Mr. Garcia could not work as an IT Trainer at NYP with those charges.

36. Shocked, Mr. Garcia responded that he did not have any open criminal charges and asked what the charges were.

37. Ms. Samson begrudgingly read off the first two or three charges.

38. Mr. Garcia told Ms. Samson that her information was incorrect, as those charges had already been dismissed, and that he would send her a Certificate of Disposition showing same.

39. Ms. Samson said that she would wait for the Certificate of Disposition.

40. The next morning, Mr. Garcia sent Ms. Samson a copy of his official Certificate of Disposition, which showed that all charges Mr. Garcia knew about had been dismissed and that Mr. Garcia had pled guilty to a second-degree harassment violation.

41. Ms. Samson did not provide Mr. Garcia with a copy of his consumer credit report or a written description of his rights under the FCRA.

42. Mr. Garcia called Ms. Samson to explain that the charges had all been dropped and tried to explain the specific circumstances surrounding the second-degree harassment violation to Ms. Samson.

43. Ms. Samson cut Mr. Garcia off, however, and told him that it did not matter what was in his background check.

44. So long as Mr. Garcia had any convictions, Ms. Samson stated, he could not be employed by Execu|Search, and Execu|Search's decision to terminate him would stand.

45. Later that day, Ms. Samson sent Mr. Garcia a notice of adverse action stating the same: that Execu|Search had terminated his employment based on his consumer report.

46. In the body of her October 4, 2017 email to Mr. Garcia, Ms. Samson again stated, now for the third time, that Execu|Search was terminating Mr. Garcia's employment based on his criminal background check: "We, unfortunately, cannot clear the background unless it is settled by Sterling [InfoSystems, Inc., the company with whom Execu|Search contracted to perform background checks on its job applicants].  Until further notice, your assignment is inactive."

47. Only then, after Execu|Search had already terminated his employment, did Execu|Search send Mr. Garcia a copy of his consumer report and a written description of his rights under the FCRA.

48. Mr. Garcia's consumer report and the written description of his rights under the FCRA were attached to Ms. Samson's October 4, 2017 email along with the adverse action notice as one document.

49. Mr. Garcia's consumer report was inaccurate and incorrectly listed the following charges as pending: second-degree aggravated harassment, fourth-degree criminal possession of

7

a weapon, endangering the welfare of children, third-degree assault, and second-degree menacing.

50. These charges were not pending, but had already been dismissed with prejudice on July 11, 2016, which Mr. Garcia's Certificate of Disposition stated.

51. Mr. Garcia's consumer report contained no other charges, criminal convictions, or other violations.

52. Execu|Search has neither contacted Mr. Garcia nor scheduled Mr. Garcia for work since October 4, 2017.

53. As such, Mr. Garcia's employment with Execu|Search ended on October 4, 2017.

54. In sum, Execu|Search did not send Mr. Garcia a copy of his consumer report or a written description of his rights under the FCRA until after Execu|Search had already terminated Mr. Garcia's employment, in violation of the FCRA.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Failure to Provide Copy of Consumer Report in Violation of the FCRA

55. Plaintiff, on behalf of himself and those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 54 with the same force as though separately alleged herein.

56. Under 15 U.S.C. § 1681(b)(3)(A), before taking an adverse employment action against a job applicant based on a consumer report, the employer must provide the applicant with a copy of their consumer report.

57. Execu|Search did not provide Mr. Garcia and the putative Class 1 members with copies of their consumer reports prior to taking adverse employment actions against them, in violation of the FCRA.

58. For this violation, Mr. Garcia and the putative Class 1 members are entitled to the greater of their actual damages or statutory damages up to $1,000.

## SECOND CAUSE OF ACTION
## Failure to Provide Description of Rights in Violation of the FCRA

59. Plaintiff, on behalf of himself and those similarly situated, hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 58 with the same force as though separately alleged herein.

60. Under 15 U.S.C. § 1681(b)(3)(A), before taking an adverse employment action against a job applicant based on a consumer report, the employer must provide the applicant with a description in writing of their rights under the FCRA.

61. Here, Execu|Search did not provide Mr. Garcia and the putative Class 2 members with descriptions in writing of their rights under the FCRA prior to taking adverse employment actions against them, in violation of the FCRA.

62. For this violation, Mr. Garcia and the putative Class 2 members are entitled to the greater of their actual damages or statutory damages up to $1,000.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial; and

C. For such other and further relief as the Court deems just and proper.


Dated:     New York, New York
           December 1, 2017


                                    By:    s/ Walker G. Harman, Jr.
                                           Walker G. Harman, Jr. [WH-8044]
                                           Edgar M. Rivera [ER-1378]
                                           THE HARMAN FIRM, LLP
                                           220 Fifth Avenue, Suite 900
                                           New York, NY 10001
                                           (212) 425-2600
                                           wharman@theharmanfirm.com
                                           erivera@theharmanfirm.com

                                           *Attorneys for Plaintiff*