UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

MANUEL GARCIA, *on behalf of himself and those similarly situated*,

    Plaintiff,

-against-

THE EXECU|SEARCH GROUP, LLC,

    Defendant.

---------------------------------

17cv9401

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

    Manuel Garcia brings this putative class action under the Fair Credit Reporting Act ("FCRA") against the Execu|Search Group, LLC ("ESG"). ESG moves to strike or dismiss Garcia's class allegations prior to any motion to certify a class. In his opposition, Garcia seeks sanctions under 28 U.S.C. § 1927 against ESG for purportedly stalling this litigation. For the reasons that follow, ESG's motion to strike or dismiss the class allegations and Plaintiff's request for sanctions are denied.

## BACKGROUND

    The operative facts are straightforward and are drawn from the Second Amended Complaint ("Complaint"). ESG is an executive recruitment and temporary staffing agency. Around September 2017, an ESG recruiter contacted Garcia about a temporary position in which ESG would employ him to provide information technology training services to nurses and doctors at various New York-Presbyterian Hospital locations. Following a successful interview, Garcia began work on October 2, 2017. The next day, Garcia received notice from ESG that his background check revealed open criminal charges and that ESG terminated his employment

because Garcia could not work at New York-Presbyterian Hospital with those charges. Although Garcia protested that the charges had already been dismissed, ESG stood by its decision to terminate him based on those charges listed in his consumer credit report.

Garcia claims that ESG violated 15 U.S.C. § 1681b(b)(3)(A) of the FCRA by failing to provide him with a copy of his consumer credit report or a written description of his FCRA rights sufficiently in advance of taking adverse employment action against him based on that report. He claims that ESG provided his consumer credit report and a written description of his rights only <u>after</u> he had been terminated—not to mention that the criminal history information in the report was inaccurate. He seeks to certify a class of employees and prospective employees of ESG who were the subject of a consumer credit report and against whom ESG took some adverse employment action based on information in the report.

## DISCUSSION

I.  <u>Motion to Strike or Dismiss</u>

Rule 12(f) permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In addition, Rule 23(d)(1)(D) permits a court to "require that the pleadings be amended to eliminate allegations about representation of absent persons . . . ." Fed. R. Civ. P. 23(d)(1)(D). Whether to grant or deny a motion to strike lies within the court's sound discretion. <u>Ong v. Chipotle Mexican Grill, Inc.</u>, 294 F. Supp. 3d 199, 222 (S.D.N.Y. 2018). In this circuit, motions to strike are looked on with disfavor, and motions to strike class allegations are "even more disfavored" because they "require[] a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class

certification." Chenensky v. N.Y. Life Ins. Co., 2011 WL 1795035, at *1 (S.D.N.Y. Apr. 27, 2011) (citations and quotation marks omitted).

Thus, "[a] court will deny a motion to strike as premature unless the defendants 'demonstrate from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery.'" In re: Libor-Based Fin. Instruments Antitrust Litig., 2016 WL 2851333, at *1 (S.D.N.Y. May 13, 2016) (second, third, and fourth alterations in original) (citation omitted); see also McLaughlin on Class Actions § 3.4 (remarking that motions to strike class allegations "should not be the norm, but are appropriate where the unsuitability of class treatment is evident on the face of the complaint and incontrovertible facts"). ESG contends that the class allegations must be dismissed or stricken because (1) the proposed class is an impermissible fail-safe class; (2) the class allegations fail to allege the necessary factual matter to satisfy the heightened pleading standard under Rule 12(b)(6); and (3) the class allegations do not satisfy Rule 23(a)'s prerequisites. Each argument is addressed seriatim.

    A.  <u>Whether the Proposed Class Is a Fail-Safe Class</u>

The unsuitability of class treatment may be apparent on the face of the complaint if the putative class is a fail-safe class. A fail-safe class is one whose definition "shields the putative class members from receiving an adverse judgment." Mazzei v. Money Store, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (citation omitted). In such a class, "either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." Mazzei, 288 F.R.D. at 55; accord Spread Enters., Inc. v. First Data Merchant Servs. Corp., 298 F.R.D 54, 69 (E.D.N.Y. 2014). Thus, fail-safe classes tend to be defined in terms of a "legal injury" or "by reference to a particular statute, regulation, or contract that has been allegedly

3

violated or breached." Gregory v. Stewart's Shops Corp., 2016 WL 8290648, at *18 (N.D.N.Y. July 8, 2016).

At the pre-motion conference, this Court raised its concerns that the classes proposed in the original complaint were tainted by fail-safe characteristics. In particular, Garcia sought to litigate this action on behalf of applicants for employment with ESG in New York who were not provided with a copy of their consumer credit report or a written description of their rights under the FCRA before ESG took adverse employment action against them based on their consumer credit report. (See Class Action Complaint, ECF No. 1, ¶ 8.) In other words, the classes consisted of those—and only those—to whom ESG would be liable under the FCRA. See 15 U.S.C. § 1681b(b)(3)(A)(i), (ii) (providing in relevant part that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates" a copy of the report and a written description of the consumer's rights under the FCRA).

In response, Garcia amended the class definition to encompass "[a]ll employees or prospective employees of [ESG] residing in the United States . . . who were the subject of a consumer report [within the statutory limitations period] and against whom [ESG] took adverse action based on information contained in each consumer report." (Compl. ¶ 52.) ESG asserts that the amended class remains "an impermissible fail-safe class" because any employee not subject to an adverse action by ESG based on his consumer credit report would "not [be] in the class, and therefore not [be] bound by the judgment." (Defendant The Execu|Search Group, LLC's Memorandum of Law in Support of Its Motion to Dismiss and to Strike Plaintiff's Class Allegations, ECF No. 30 ("ESG Mem."), at 3 (citing Mazzei, 288 F.R.D. at 55).) But such an

4

argument—which in essence restates the obvious proposition that non–class members may not be bound by a class judgment—reflects a misunderstanding of the nature of fail-safe classes. Specifically, what makes a fail-safe class asymmetrically unfair to defendants is that a finding of liability binds a defendant to an adverse judgment, while a finding of non-liability binds no class member because no class would exist by definition. See 1 Newberg on Class Actions § 3.6 (5th ed. 2011). And as a practical matter, fail-safe classes are "unmanageable because the members of the class could only be known after a determination of liability." Mazzei, 288 F.R.D. at 55.

The amended class definition does not present the same fail-safe concerns as the originally defined classes. As Garcia notes, the amended class definition may now encompass some individuals to whom ESG is not liable under the FCRA but who would nevertheless be bound by a finding of non-liability, such as an employee who did receive his consumer credit report and a written description of rights prior to adverse employment action by ESG. However, it would be just as facile to assume that the putative class passes muster simply because it now includes at least one individual to whom ESG might not be liable. The broader concern implicated by fail-safe classes is the ascertainability of class membership, the "touchstone of [which] is whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" Brecher v. Republic of Arg., 806 F.3d 22, 24 (2d Cir. 2015) (citation omitted). In other words, "[a] class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." Brecher, 806 F.3d at 24-25 (quoting Charron v. Pinnacle Grp. N.Y. LLC, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)).

The language defining the putative class to include individuals subject to an adverse action by ESG "based on information contained in each consumer report" raises some

concern as to administrative feasibility.  To be sure, ESG's reasons for taking adverse action may well be objective.  But "it cannot be the case that any objective criterion will do," though "objective criteria may be necessary to define an ascertainable class."  Brecher, 806 F.3d at 25.  Indeed, the extent to which ESG's adverse action was "based on information contained in each consumer report" is not subject to ready judicial determination and may require individualized mini-hearings into why ESG took that adverse action.  See Charron, 269 F.R.D. at 229 ("To be ascertainable, the class must be 'readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling.'" (citation omitted).  Accordingly, this Court exercises its discretion to omit from the class definition the language "based on information contained in each consumer report."  See Cokely v. N.Y. Convention Ctr. Operating Corp., 2004 WL 1152531, at *2 n.3 (S.D.N.Y. May 21, 2004) ("The court may exercise its discretion 'to construe the complaint or redefine the class to bring it within the scope of Rule 23 . . . .'" (citations omitted)).  This modification is made without prejudice to the parties' ability to raise concerns of ascertainability at the class certification stage, and "[s]hould it become necessary to modify the class definition going forward, the Court has discretion to do so."  Charron, 269 F.R.D. at 229.

    B.  Applicability of Rule 12(b)(6)

ESG also contends that the "class-based claims" must be dismissed under Rule 12(b)(6) for failure to state a claim.  Although difficult to follow, ESG's argument appears to proceed as follows: (1) class claims must satisfy the heightened pleading standards under the Supreme Court's Rule 12(b)(6) jurisprudence; (2) Rule 23(b)(3) class actions require allegations of a common class-wide policy or practice that points to a common issue of law or fact at the center of the dispute; and (3) Garcia fails to allege facts plausibly suggesting that ESG engaged in class-wide violations of the FCRA, and thus fails to state a "claim for class certification."

As an initial matter, ESG offers scant authority for the proposition that class allegations must satisfy the pleading standards that the Supreme Court pronounced in Bell Atlantic Corp. v. Twombly, 500 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), citing only to Rule 12(b)(6) and inexplicably, Rule 12(b)(1). Certainly, some out-of-circuit pre-Twombly decisions have concluded that the Rule 12(b)(6) standard applies to pre-discovery motions to strike class allegations. See, e.g., Bessette v. Avco Fin. Servs., Inc., 279 B.R. 442, 450 (D.R.I. 2002); In re Walls, 262 B.R. 519, 524 (Bankr. E.D. Cal. 2001). In this Court's view, however, there is no basis to apply Rule 12(b)(6) because ESG's motion does not test the legal sufficiency of the underlying claims, but the propriety of the procedural vehicle of a class action. Accord, e.g., Royal Mile Co. v. UPMC, 40 F. Supp. 3d 552, 579 (W.D. Pa. 2014) ("It would be error for a court to apply the Rule 12(b)(6) plausibility standard set forth in Twombly and Iqbal to 'dismiss' class action allegations in a complaint."); Clerkin v. MyLife.Com, 2011 WL 3809912, at *4 (N.D. Cal. Aug. 29, 2011) (explaining that "Rule 12(b)(6) is not the appropriate procedural vehicle to challenge class allegations").

ESG's contention that Rule 23(b)(3) classes require allegations of a class-wide common policy or practice pointing to a common issue of law or fact at the center of the dispute rests on similarly slender reeds. (See ESG Mem. at 5.) As best this Court can discern, that premise derives from the Supreme Court's holding that Rule 23's commonality prerequisite requires that class claims depend on a common contention that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011). But ESG conflates the plausibility pleading standards announced in Twombly and Iqbal with Rule 23's class certification inquiry. Cf. Wal-

Mart Stores, 564 U.S. at 351 (clarifying that "Rule 23 does not set forth a mere pleading standard"). In other words, whether Garcia has stated a plausible FCRA claim is analytically distinct from whether a class treatment is procedurally proper to test the merits of that claim.[1] See Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 488 (2d Cir. 2013) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims." (citation omitted)). Although "a party seeking class certification must affirmatively demonstrate . . . compliance with [Rule 23]" by "prov[ing] that there are in fact . . . common questions of law or fact," Wal-Mart Stores, 564 U.S. at 352 (emphasis in original), Garcia is not required to do so at the pleading stage without the benefit of class discovery or full class certification briefing.

C. Rule 23(a)'s Prerequisites

Finally, ESG seeks to strike the class allegations from the Complaint based on Garcia's inability to satisfy the prerequisites set forth in Rule 23(a). To certify a proposed class, a plaintiff must demonstrate "that the class and its proposed representatives meet all of the requirements of both Rule 23(a) and one of the subsections of Rule 23(b)." Chenensky, 2011 WL 1795305, at *1 (citation and quotation mark omitted). Specifically, Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there be common questions of law or fact; (3) the claims or defenses of the class representatives be typical of the claims or defenses of the class; and (4) the class representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

ESG disputes the numerosity of the putative class, the typicality of Garcia's claims, and his ability to adequately represent the class. But ESG does not demonstrate that the

---

[1] To the extent that ESG now contends that Garcia fails to state a plausible claim under the FCRA in its reply brief, this Court declines to consider such a belated argument. See McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani, 295 F. Supp. 3d 404, 414 n.5 (S.D.N.Y. 2017) (declining to consider arguments raised for the first time in a reply brief).

8

unsuitability of class treatment is clear from the face of the Complaint, such as instances where plaintiffs lack standing or fail to exhaust pre-suit requirements. See In re: Libor-Based Fin. Instruments Antitrust Litig., 2016 WL 2851333, at *1. Instead, ESG's factual assertions regarding the lack of numerosity, typicality, and adequacy of representation are unmoored from any factual record but based only on its own perspective of the disputed merits of class certification. Of course, this is unsurprising given the procedural posture of this action and bolsters the conclusion that the propriety of class treatment in this case ought to be determined at the class certification stage. Fundamentally, ESG's arguments regarding numerosity, typicality, and adequacy of representation are precisely "the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)." See Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (collecting cases). Thus, ESG's motion to strike based on the failure to satisfy Rule 23(a)'s prerequisites is procedurally premature and denied without prejudice to opposing class certification on these grounds with the benefit of a complete factual record.

II.     Request for Sanctions

Garcia seeks sanctions under 28 U.S.C. § 1927, which allows a court to direct counsel to satisfy the "excess costs, expenses, and attorneys' fees reasonably incurred" because of conduct that "multiplies the proceedings in any case unreasonably and vexatiously." An award under 28 U.S.C. § 1927 is proper, however, "only 'when there is a finding of conduct constituting or akin to bad faith.'" Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016) (citation omitted). For instance, such an award is "proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." State St. Bank & Tr. Co. v. Inversiones

9

Errazuriz Limitada, 374 F.3d 158, 180 (2d Cir. 2004) (citation omitted). While a court "may infer bad faith when a party undertakes frivolous actions that are 'completely without merit,'" Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 55 (2d Cir. 2018) (citation omitted), it bears underscoring that the "bad faith" requirement imposes "a high bar to satisfy." United States v. Prevezon Holdings, Ltd., 305 F. Supp. 3d 468, 483 (S.D.N.Y. 2018). Ultimately, the "decision to issue sanctions under [28 U.S.C. § 1927] lies within this Court's broad discretion." Prevezon Holdings, Ltd., 305 F. Supp. 3d at 478.

Garcia's bid for sanctions principally rests on ESG's purported misrepresentation of the holdings of several cases, assertion of knowingly futile arguments, and refusal to consent to Garcia's request to file an amended complaint. To be sure, ESG's arguments are meritless. But the mere proffer of unmeritorious arguments is insufficient on its own to warrant an award under 28 U.S.C. § 1927. See Sorenson v. Wolfson, 170 F. Supp. 3d 622, 633 (S.D.N.Y. 2016) (reiterating that "the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes" (emphasis added) (citation omitted)). Despite the indefensibility of ESG's positions, ESG "ties its reasoning, however flawed to recognizable legal concepts." Zurich Am. Ins. Co., 811 F.3d at 591. This Court cannot say that they are so "unconvincing as to require the conclusion that they are made for an improper purpose." Zurich Am. Ins. Co., 811 F.3d at 591; see also Keller v. Mobil Corp., 55 F.3d 94, 99 (2d Cir. 1995) (noting that sanctionable conduct includes resubmitting a previously denied motion, bringing a motion based on facts contrary to those previously found by the court, making "several insupportable bias recusal motions and repeated motions to reargue," or "continually engaging in obfuscation of the issues, hyperbolism [,] and groundless presumptions in addition to insinuating that the court was biased" (citation omitted)). Accordingly, this Court

10

declines to impose sanctions under 28 U.S.C. § 1927.

## CONCLUSION

For the foregoing reasons, ESG's motion to strike or dismiss the class allegations is denied without prejudice to challenging whether Rule 23(a)'s prerequisites have been met at the class certification stage. Garcia's application for sanctions is denied. The parties are directed to appear for a status conference on March 15, 2019 at 4:00 p.m. The Clerk of Court is directed to terminate the motion pending at ECF No. 29.

Dated: February 19, 2019
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.